```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7/20/2020
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
MIGUEL ANGEL GONZALEZ RAMIREZ,
individually and on behalf of others similarly
situated,

                                        Plaintiff,

              -against-                                           19-cv-00563 (AT) (KHP)

DEVOE GROCERY STORE INC. (D/B/A                                   **REPORT & RECOMMENDATION**
DEVOE GROCERY STORE), GENESIS
GROCERY STORE INC. (D/B/A GENESIS
GROCERY STORE), JUAN C VALDEZ,
FRANCIS S NUNEZ VARGAS (A.K.A.
NUNEZVAGGAS) and NINO DOE,

                                        Defendants.
------------------------------------------------------------------X

**TO:      HON. ANALISA TORRES, United States District Judge**
**FROM: KATHARINE H. PARKER, United States Magistrate Judge**

          Plaintiff Miguel Angel Gonzalez Ramirez commenced this action against his former

employers, Defendants Devoe Grocery Store Inc. (d/b/a Devoe Grocery Store) ("Devoe Grocery

Store"), Genesis Grocery Store Inc. (d/b/a Genesis Grocery Store) ("Genesis Grocery Store,"

and, with Devoe Grocery Store, the "Grocery Store"), Juan C. Valdez, Francis S. Nunez Vargas

(a/k/a NunezVaggas), and Nino "Doe," under the Fair Labor Standards Act of 1938 ("FLSA") and

N.Y. Labor Law ("NYLL") §§ 190 *et seq*. and §§ 650 *et seq*. for unpaid regular and overtime

wages, spread of hours pay, liquidated damages, statutory damages, pre-judgment interest,

costs incurred in connection with purchasing "tools of the trade," post-judgment interest, and

attorneys' fees and costs.

Despite being served with the Complaint, Defendants failed to appear.  Plaintiff has now moved for a default judgment and damages against all Defendants, except Nino "Doe,"[1] pursuant to Federal Rule of Civil Procedure 55 ("Rule 55").  For the reasons set forth below, the undersigned respectfully recommends that Plaintiff's Motion for a Default Judgment and Damages be GRANTED, IN PART, and that a default judgment be entered against Defendants Devoe Grocery Store, Genesis Grocery Store, Valdez, and Nunez Vargas, and that Plaintiff be awarded compensatory damages, liquidated damages, pre-judgment interest, and attorneys' fees and costs, plus post-judgment interest, as discussed below.  The undersigned also respectfully recommends that Plaintiff's request for reimbursement of costs incurred in connection with purchasing "tools of the trade" be denied.

## BACKGROUND[2]

### A.  Factual Background

Plaintiff Miguel Angel Gonzalez Ramirez worked as a stocker and sandwich preparer at Devoe Grocery Store (formerly known as Genesis Grocery Store), located at 342 Devoe Avenue in the Bronx.  (Dkt. No. 1 ("Compl.") ¶¶  1-4;  Dkt. No. 37-12 ("Pl.'s Decl.") ¶¶ 1-3, 7.)   Plaintiff worked at the Grocery Store from in or about July of 2014 until on or about December 24, 2018.  (Compl. ¶ 4; Pl.'s Decl. ¶¶ 1-3, 6; Dkt. No. 59 ("Pl.'s Proposed Findings of Fact and

---

[1] At the hearing held by this Court on June 22, 2020, Plaintiff's counsel confirmed that "Doe" is a fictitious last name, and that Plaintiff does not know Doe's last name or whether he is in the military or received adequate notice of this action.  Accordingly, Plaintiff's counsel agreed to forgo seeking a default and damages against Nino Doe. (Dkt. No. 72 ("Hr'g Tr.") 5:04-20.)

[2] As discussed in detail below, Defendants are in default.  Accordingly, Plaintiff's allegations in the Complaint, with the exception of those related to damages, are accepted as true and all reasonable inferences are drawn in Plaintiff's favor.  *See Finkel v. Romanowicz,* 577 F.3d 79, 84 (2d Cir. 2009) (citing *Au Bon Pain Corp. v. Artect, Inc.,* 653 F.2d 61, 65 (2d Cir. 1981)).

Conclusions of Law") ¶ 8.)  During that timeframe, Defendants Juan C. Valdez and Francis S. Nunez Vargas, were "owners, managers, principals, or agents of [the Grocery Store] and . . . operated the grocery store as a joint or unified enterprise."  (Compl. ¶ 3.)  Defendants Valdez and Nunez Vargas had authority to hire and fire employees, and controlled the terms and conditions of Plaintiff's employment by determining his rate of pay and method of compensation, setting his schedule, and maintaining employee records.  (*Id*. ¶¶ 1-2, 20-21; Pl.'s Decl. ¶ 5.)  Each year, from 2014 to 2018, Defendants engaged in interstate commerce and, jointly and separately, had a gross annual volume of sales of not less than $500,000.  (Compl. ¶¶ 32-33.)

From approximately July 2014 until on or about January 2017, Plaintiff worked six days and approximately 55 hours per week.  (Pl.'s Proposed Findings of Fact and Conclusions of Law ¶ 10; Pl.'s Decl. ¶ 12.)  During that timeframe, Plaintiff was paid a fixed cash salary of $300, regardless of whether he worked longer hours. (Pl.'s Proposed Findings of Fact and Conclusions of Law ¶ 13; Pl.'s Decl. ¶¶  14-15, 17.)  Then, from approximately January 2017 until on or about December 24, 2018, Plaintiff worked five days and approximately 66 hours per week. (Pl.'s Proposed Findings of Fact and Conclusions of Law ¶ 11; Pl.'s Decl. ¶ 13.) During that timeframe, Plaintiff was paid a fixed cash salary of $250, regardless of whether he worked longer hours.  (Pl.'s Proposed Findings of Fact and Conclusions of Law ¶ 14; Pl.'s Decl. ¶¶14, 16-17.)

Defendants did not provide Plaintiff with a wage notice at the time he was hired or a statement of his wages at the end of each pay period.  (Pl.'s Decl. ¶¶ 19-21.)  Plaintiff was also not required to keep track of the hours he worked.  (*Id*. ¶ 18.)  Plaintiff also claims that

Defendants required him to purchase certain items he needed to perform his job with his own funds, including cleaning wipes, rat poison, dishwashing sponges, and plumbing sealant. (*Id.* ¶ 16.)

**B. Procedural Background**

Plaintiff commenced this action in January 2019, alleging that Defendants failed to pay him: the minimum hourly wage, as required by the FLSA and NYLL; overtime compensation at a rate of one-and-a-half times the regular rate of pay for each hour worked in excess of forty hours in a work week, in violation of the FLSA and NYLL; and one additional hour's pay at the minimum wage rate for each day Plaintiff worked for more than 10 hours, in violation of the NYLL. Plaintiff also contends that Defendants failed to provide him with a wage notice when he was hired and a statement of his wages at the end of each pay period, as required by the NYLL. He also claims that Defendants required him to purchase the "tools of the trade" required to perform his job, thus reducing his wages in violation of the FLSA and NYLL. Plaintiff seeks compensatory damages for his claims, as well as liquidated damages, pre- and post-judgment interest, and attorneys' fees and costs. (Compl. ¶¶ 68-102.)

Defendants were served with the Summons and Complaint between January 25, 2019 and February 13, 2019, but failed to appear or file an answer to the Complaint. (Dkt. Nos. 15-19.) On June 19, 2019, the Clerk of Court issued certificates of default as to all Defendants. (Dkt. Nos. 31-35.) Plaintiff then moved for a default judgment against all Defendants, and the Honorable Analisa Torres ordered Defendants to show cause why the Court should not issue a default judgment against them. (Dkt. Nos. 36-40.) On August 16, 2019, Plaintiff mailed Defendants a copy of the Order to Show Cause and the supporting papers. (Dkt. No. 42.) The

show cause hearing was adjourned twice and, each time, Plaintiff served Defendants with copies of the Court's orders and supporting papers.  (Dkt. Nos. 43-49, 52-56.)  In November of 2019, Judge Torres held the show cause hearing and Defendants failed to appear.  Judge Torres then referred this action to the undersigned for a damages inquest. (Dkt. No. 57.)

In December of 2019, this Court ordered Plaintiff to file his Proposed Findings of Fact and Conclusions of Law, and to serve the same on Defendants.  (Dkt. No. 58.)  The Court subsequently scheduled a hearing on damages, and directed Plaintiff to serve a copy of the order, as well as any documents not yet served on Defendants, by no later than June 15, 2020. (Dkt. No. 61.)  In its Order, the Court gave Defendants time to oppose Plaintiff's Motion for a Default Judgment and Damages, and instructed them to appear at the hearing.  (*Id.*)  Plaintiff served the documents on Defendants on June 12, 2020.  Service was effectuated on Devoe and Genesis via the Office of the Secretary of State of the State of New York on June 12, 2020.  (Dkt. No. 62-63.)  The individual Defendants were served on June 12, 2020 at their place of business – 342 Devoe Avenue, Bronx, New York 10460 – and the documents were left with a person of suitable age at that address and were also mailed to them.  (Dkt. Nos. 64-66.)

This Court held a hearing on damages on June 22, 2020.  Defendants failed to appear and did not oppose Plaintiff's Motion.  At the hearing, this Court instructed Plaintiff to serve a copy of his Declaration in support of his Motion for Default Judgment and Damages, which had not been previously served on Defendants.  Plaintiff served a copy of his Declaration on the individual Defendants on June 23, 2020 at their place of business, and the documents were served on a person of suitable age at that address and were also mailed to them.  (Dkt. Nos. 67-

69.)  Defendants Devoe and Genesis were served via the New York Secretary of State on June 24, 2020.  (Dkt. Nos. 70-71.)

## DISCUSSION

Below, I first address whether Defendants Devoe Grocery Store, Genesis Grocery Store, Valdez, and Nunez Vargas are liable as employers under the FLSA and NYLL.  Next, I address whether Plaintiff has met the requirements to obtain a default judgment against those Defendants, pursuant to Rule 55.  Finally, I address Plaintiff's entitlement to damages.

### A. Employer Liability Under the FLSA and NYLL

#### 1. Statute of Limitations under the FLSA and NYLL

Claims brought under the FLSA must be raised within two years of a non-willful violation, or within three years of a willful violation. *See Pineda v. Inc.*, 831 F. Supp. 2d 666, 674 (S.D.N.Y. 2011) (citing 29 U.S.C. § 255(a)).  Where defendants are in default, the court may accept the plaintiff's allegation that their violation was willful.  *See Angamarca v. Pita Grill 7 Inc.*, No. 11 Civ. 7777(JGK)(JLC), 2012 WL 3578781, at *4 (S.D.N.Y. Aug. 2, 2012) (accepting plaintiff's allegation of defendants' willful violation where defendants defaulted).  Claims brought pursuant to the NYLL must be raised within six years.  *See Pineda*, 831 F. Supp. 2d at 674 (citing NYLL § 663(1), (3)).

Although defendants may be simultaneously liable under both the FLSA and NYLL, plaintiffs may not recover damages under both the FLSA and NYLL for the same injury.  Where both the FLSA and NYLL apply to a plaintiff's claims, courts apply the statute that provides the greatest measure of damages.  *See Elisama v. Ghzali Gourmet Deli Inc.*, No. 14CV8333 (PGG) (DF), 2016 WL 11523365, at *11 (S.D.N.Y. Nov. 7, 2016) (applying NYLL's six-year statute of

limitations because it provided the greatest measure of relief), *adopted by* 2018 WL 4908106 (S.D.N.Y. Oct. 10, 2018); *Gamero v. Koodo Sushi Corp.*, 272 F. Supp. 3d 481, 498, 515–16 (S.D.N.Y. 2017) (same), *aff'd,* 752 F. App'x 33 (2d Cir. 2018)*; Hernandez v. Jrpac Inc.*, 14 Civ. 4176 (PAE), 2016 WL 3248493, at *31 (S.D.N.Y. June 9, 2016) ("Plaintiffs' damages award under the NYLL necessarily will subsume their award under the FLSA. . . . While the Court will formulate a separate damages award for each claim, as a matter of economic reality, for each plaintiff, the NYLL award will be decisive.").

Here, the Complaint was filed on January 18, 2019.  Because Plaintiff began working for Defendants in or about July of 2014, some of his claims are barred by the FLSA's three-year statute of limitations period and all of his claims fall within the NYLL's six-year statute of limitations period.  Accordingly, it is appropriate to apply the NYLL to Plaintiff's claims because it will provide the greatest measure of relief.

### 2.  Applicability of the FLSA and NYLL

I turn next to whether the FLSA and NYLL apply to Plaintiff's claims. To establish a claim under the FLSA, a plaintiff must demonstrate that: (1) he or she was an "employee" of the defendants, as defined in the FLSA; (2) that the defendants engaged in commerce; and (3) that the employment relationship was not exempt by the FLSA.  *See Garcia v. Badyna*, No. 13–CV–4021 (RRM)(CLP), 2014 WL 4728287, at *5 (E.D.N.Y. Sept. 23, 2014); *see also* 29 U.S.C. §§ 206, 207, 213; *Fermin v. Las Delicias Peruanas Rest., Inc.*, 93 F. Supp. 3d 19, 31–32 (E.D.N.Y. 2015).  The NYLL is, for the most part, coextensive with the FLSA, and differs from the FLSA as described below.

   a.  **Definition of "Employer" Under the FLSA and NYLL and Joint and
       Several Liability**

The FLSA provides a broad definition of what constitutes an employer-employee

relationship, and permits "[a]n employee . . . [to] simultaneously have multiple employers

within the meaning of the [statute]." *Inclan v. New York Hosp. Grp., Inc.*, 95 F. Supp. 3d 490,

507 (S.D.N.Y. 2015); *see also Nationwide Mut. Ins. Co. v. Darden,* 503 U.S. 318, 326 (1992);

*Barfield v. N.Y.C. Health & Hosps. Corp.,* 537 F.3d 132, 141 (2d Cir. 2008).

   When determining whether an employer-employee relationship exists, courts apply a

flexible standard and consider the " 'economic reality' " and " 'totality of the circumstances' "

surrounding the relationship. *Inclan*, 95 F. Supp. 3d at 507 (quoting *Barfield*, 537 F.3d at 141–

42.  When applying the "economic reality" test, courts consider four factors to determine

whether a defendant is an employer under the FLSA, namely "whether the individual: (1) had

the power to hire and fire the employees, (2) supervised and controlled employee work

schedules or conditions of employment, (3) determined the rate and method of payment, and

(4) maintained employment records."  *Williams v. Epic Sec. Corp.*, 358 F. Supp. 3d 284, 305

(S.D.N.Y. 2019) (internal quotation marks and citation omitted); *see also* 29 U.S.C. § 203(d) (the

term " 'employer' includes any person acting directly or indirectly in the interest of an employer

in relation to an employee . . . ."); *Feng Chen v. Patel*, No. 16 Civ. 1130 (AT) (SDA), 2019 WL

2763836, at *5 (S.D.N.Y. July 2, 2019) (quoting *Zheng v. Liberty Apparel Co. Inc.*, 355 F.3d 61, 67

(2d Cir. 2003)); *Garcia*, 2014 WL 4728287, at *5 (explaining that individuals are considered

employers for purposes of the FLSA if they have "'operational control' over the employee in

question" (quoting *Irizarry v. Catsimatidis,* 722 F.3d 99, 110 (2d Cir. 2013)).

A defendant may still be found to be an employer where one of these factors is not met, so long as the other factors are present.  *See Fermin*, 93 F. Supp. 3d at 36 (although individual defendants failed to maintain employment records, they were employers within the meaning of the FLSA and NYLL where they satisfied the other three factors); *see also Barfield*, 537 F.3d at 145; *Zheng*, 355 F.3d at 71.  Courts in this Circuit consistently interpret the definition of employer under the NYLL " 'coextensively with the definition used by the FLSA,' " and, thus, also apply the economic reality test when determining whether a defendant is an employer under the NYLL. *Williams*, 358 F. Supp. 3d at 305 (quoting *Inclan*, 95 F. Supp. 3d at 511).

Where a plaintiff raises claims against multiple corporate defendants, "courts will treat [those] corporate defendants as a single employer for liability purposes if the plaintiff shows the 'nominally separate entities are actually part of a single integrated enterprise.'" *Armata v. Unique Cleaning Servs., LLC*, No. 13-CV-3625 (DLI) (RER), 2015 WL 12645527, at *3 (E.D.N.Y. Aug. 27, 2015) (quoting *Clinton's Ditch Co-op Co., Inc. v. N.L.R.B.*, 778 F.2d 132, 137 (2d Cir. 1985)).  When determining whether multiple corporate defendants are a single employer for liability purposes, courts consider whether the corporate defendants have: "'(1) interrelated operations, (2) common management, (3) centralized control of labor relations, and (4) common ownership.'" *Id*. (quoting *Chen v. TYT East Corp.*, No. 10 Civ. 5288(PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012)); *see also Murray v. Miner*, 74 F.3d 402, 404 (2d Cir. 1996)).  There is no requirement that every factor be present and no single factor is controlling. *See Chen*, 2012 WL 5871617, at *3 (citing *Lihli Fashions Corp., Inc. v. NLRB,* 80 F.3d 743, 747 (2d Cir. 1996)).  And, courts have found multiple corporate defendants to constitute a single employer where they were owned, maintained and controlled by the same owners during the

relevant timeframe and those individuals applied the "same pay policies, practices, and procedures to all hourly employees" during the relevant period. *See Armata, LLC,* 2015 WL 12645527, at *4.

Here, Plaintiff has asserted facts showing that Defendants Valdez and Nunez Vargas meet the "economic reality test" under the FLSA and NYLL because they had the power to hire and fire employees, supervised and controlled the work schedules, determined the rate and method of payment, and maintained records. *See Garcia*, 2014 WL 4728287, at *5 (finding individual defendant liable where plaintiff alleged defendant owned the restaurant where he worked and "had the power to hire and fire employees, set wages and schedules, and oversee the day-to-day"). As such, Valdez and Nunez Vargas were employers within the meaning of the FLSA and NYLL and are jointly and severally liable for any damages awarded to Plaintiff. *See Fermin*, 93 F. Supp. 3d at 37 (finding that restaurant's owners were employers under the FLSA and NYLL and, thus, jointly and severally liable).

Plaintiff also has alleged that when he worked at Devoe Grocery Store (formerly known as Genesis Grocery Store), the stores were owned and managed by Defendants Valdez and Nunez Vargas, who applied the same policies Plaintiff claims violated his rights under the FLSA and NYLL during the entirety of his employment there. These allegations are sufficient for this Court to conclude that Devoe and Genesis functioned as a single corporate entity and are jointly and severally liable with Valdez and Nunez Vargas for any damages awarded on Plaintiff's claims. *See id*. (restaurant's owners were employers under the FLSA and NYLL and, thus, jointly and severally liable with the defendant restaurant); *see also Pineda,* 831 F. Supp. 2d at 685–86 (where plaintiffs alleged that individual defendant was an "owner, partner, or

manager" of the defendant corporation, he was jointly and severally liable with the corporation under the FLSA and NYLL upon default).

### b.  Defendants' Engagement in Commerce

In the context of the FLSA, the term " 'commerce' means trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b).  Under the FLSA, a business engages in commerce or produces goods for commerce where it:

> [H]as employees engaged in commerce or in the production of goods for commerce, or that has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person; and
>
> [I]s an enterprise whose annual gross volume of sales made or business done is not less than $500,000 (exclusive of excise taxes at the retail level that are separately stated) . . . .

§ 203 (s)(1)(A)(i)-(ii).  The NYLL is almost identical to the FLSA, but provides a more lenient standard because it does not require the plaintiff to demonstrate that his or her employer engages in interstate commerce or makes a minimum amount of annual sales.  *See Armata*, 2015 WL 12645527, at *3.

Here, Plaintiff has alleged that the Devoe and Genesis Grocery Stores, jointly and separately, had annual sales revenues of at least $500,000, and directly engaged in interstate commerce because the stores stocked items made outside New York State.  (Compl. ¶¶ 32-33); *see Melgadejo v. S & D Fruits & Vegetables Inc.*, 12 Civ. 6852 (RA)(HBP), 2015 WL 10353140, at *4 (S.D.N.Y. Oct. 23, 2015) (holding, following defendants' default, that grocery store engaged in interstate commerce), *adopted sub nom. by Melgadejo v. S&D Fruits & Vegetables Inc.*, No. 12-CV-6852 (RA), 2016 WL 554843 (S.D.N.Y. Feb. 9, 2016); *Garcia*, 2014 WL 4728287, at *1

(finding defendant restaurant and restaurant owner in default and liable as employers under the FLSA where plaintiff cook alleged the restaurant grossed at least $500,000 per year and engaged in interstate commerce).  Accordingly, Plaintiff has met his burden of alleging that Defendants engaged in commerce under the FLSA and NYLL.

### c. Exempt and Non-Exempt Employees

Although the FLSA and NYLL exempt certain employees from minimum wage and overtime wage protections, those exceptions most often apply to those "employed in a bona fide executive, administrative, or professional capacity." 29 U.S.C. § 213; *see also Khurana v. JMP USA, Inc.*, No. 14-CV-4448 (SIL), 2017 WL 1251102, at *10 (E.D.N.Y. Apr. 5, 2017) (noting that "courts in the Second Circuit also look to the [Code of Federal] Regulations in determining whether an employee is exempt under the NYLL" (citing 12 New York Administrative Code ("NYCRR") § 142-2.2 and collecting cases)).  Here, Plaintiff alleged he worked for the Devoe and Genesis Grocery Stores stocking shelves and preparing sandwiches.  As such, he was not an exempt employee under the FLSA or NYLL.  *See Elisama*, 2016 WL 11523365, at *1 (plaintiff who worked as a sandwich maker, cashier, and soda stocker at a "deli/salad bar" was not an exempt employee).  Accordingly, Plaintiff has sufficiently established that he was a non-exempt employee under the FLSA and NYLL.  *See Armata*, 2015 WL 12645527, at *3.

### B.  Default Judgment

Rule 55 governs judgments against a party that has failed to plead or otherwise defend itself in an action.  *See Priestley v. Headminder, Inc.*, 647 F.3d 497, 504-505 (2d Cir. 2011); *Pacific M. Int'l Corp. v. Raman Int'l Gems, Ltd.*, 888 F. Supp. 2d 385, 392 (S.D.N.Y. 2012); *see also Fermin*, 93 F. Supp. 3d at 30 ("A default judgment is ordinarily justified where a defendant fails

to respond to the complaint." (internal quotation marks omitted)). The Rule requires the Clerk of the Court, upon notification from the moving party, to note the default of the party failing to defend the suit. *See Priestley*, 647 F.3d at 555 (citing Fed. R. Civ. P. 55). Once the Clerk issues a certificate of default, the moving party may apply for entry of default judgment, pursuant to Rule 55(b). *See Pacific M. Int'l*, 888 F. Supp. 2d at 392.

A default is an admission of all well-pled factual allegations in the complaint, and the allegations pertaining to liability are deemed true. *See Finkel v. Romanowicz*, 577 F.3d 79, 83–84, 83 n.6 (2d Cir. 2009). On a motion for default, the plaintiff bears the burden to demonstrate that its uncontroverted allegations, as plead, establish the defendants' liability on each cause of action. *See Bricklayers & Allied Craftworkers Local 2, Albany, N.Y. Pension Fund v. Moulton Masonry & Const., LLC*, 779 F.3d 182, 187 (2d Cir. 2015); *see also Morales v. Mw Bronx, Inc.*, No. 15-CV-6296 (TPG), 2016 WL 4084159, at *4 (S.D.N.Y. Aug. 1, 2016) (collecting cases). Here, Plaintiff has met the procedural requirements of Rule 55 by submitting requests for entries of default, obtaining certificates of default against Defendants, and moving for a default judgment. (*See* Dkt. Nos. 25-39.)

Plaintiff also properly served Defendants. Federal Rule of Civil Procedure 4(e)(1) permits service to be effectuated pursuant to the rules of the state where the district is located or service is made. *See also Fermin*, 93 F. Supp. 3d at 30. Plaintiff effectuated service on the Devoe and Genesis Grocery Stores through the New York Secretary of State, as permitted by New York Business Corporation Law § 306(b). Plaintiff also served the individual Defendants, Valdez and Nunez Vargas, by leaving the documents with a person of suitable age and

discretion at their place of business and mailing the documents to them through first class mail, as permitted by New York Civil Practice Law and Rules ("C.P.L.R.") § 308(2).

When determining whether to grant a motion for default judgment, courts in this District consider three factors: "(1) whether the defendant's default was willful; (2) whether defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer as a result of the denial of the motion for default judgment." *Nespresso USA, Inc. v. Africa Am. Coffee Trading Co. LLC*, No. 15CV5553-LTS, 2016 WL 3162118, at *2 (S.D.N.Y. June 2, 2016) (quoting *Indymac Bank, F.S.B. v. National Settlement Agency, Inc.*, No. 07-cv-6865 (LTS) (GWG), 2007 WL 4468652, at *1 (S.D.N.Y. Dec. 20, 2007)); *see also Guggenheim Capital, LLC v. Birnbaum*, 722 F.3d 444, 455 (2d Cir. 2013) (applying the first two factors in review of lower court's grant of a default judgment).

Here, all three of the foregoing factors weigh in Plaintiff's favor. First, Defendants' failure to make an appearance or to respond to Plaintiff's Complaint and Motion for Default Judgment and Damages demonstrates the willfulness of their conduct. *See Sayeg v. Azuly*, No. 14-CV-4096 (LTS) (RLE), 2016 WL 5234597, at *4 (S.D.N.Y. Aug. 12, 2016) ("By not appearing, the Court considers [defendant's] default willful."), *adopted by* 2016 WL 5108132 (S.D.N.Y. Sept. 20, 2016); *Indymac*, 2007 WL 4468652, at *1 (holding that non-appearance and failure to respond to complaint or motion for default judgment indicates willful conduct). Further, Defendants had notice and numerous opportunities to respond, but have failed to do so. *See Sayeg*, 2016 WL 5234597, at *4 ("[Defendant] clearly knew about this litigation, and willfully disregarded it by not taking any action to defend it.").

As to the second factor, this Court has no information regarding any meritorious defense Defendants may have to Plaintiff's claims because Defendants failed to make an appearance. *See Indymac*, 2007 WL 4468652, at *1; *see also Sayeg*, 2016 WL 5234597, at *4 (defendant could not present meritorious defense where he "failed to present any evidence, or even submit a conclusory denial").  Additionally, and as explained above, Plaintiff's claims fall within the NYLL's statute of limitations period, Defendants Devoe, Genesis, Valdez, and Nunez Vargas were Plaintiff's employer's under the FLSA and NYLL, and Plaintiff was not an exempt employee within the meaning of the FLSA and NYLL.

Finally, with respect to the third factor, Plaintiff will be prejudiced if denied the ability to seek a default judgment because he has no other means of obtaining relief against Defendants. *See Indymac*, 2007 WL 4468652, at *1 ("[D]enying the motion would be unfairly prejudicial to Plaintiff, because [defendants] have failed to appear, defend, or plead in response to any of the substantive allegations in Plaintiff's Complaint."); *see also Sayeg*, 2016 WL 5234597, at *4 (finding that the need to "engage in costly discovery to meet his burden of proof if the case were to proceed to trial" against an absent defendant was evidence of prejudice).  Accordingly, in light of Defendants' failure to answer or appear in this action, I respectfully recommend that a default judgment be entered against them.

### C.  Plaintiff's Damages

Now that the Court has determined that Defendants are in default, Plaintiff bears the burden to show that he is entitled to recovery. *See Fermin*, 93 F. Supp. 3d at 29 (collecting cases).  To meet this burden, Plaintiff must show that the compensation he seeks "relates 'to the damages that naturally flow from the injuries pleaded.' " *Id*. (quoting *Greyhound*

*Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 159 (2d Cir. 1992)).  Although it was not

required to do so, this Court held a hearing on June 22, 2020 on the issue of damages. *See*

F.R.C.P. 55(b); *Finkel*, 577 F.3d at 87 (explaining that courts have discretion to decide whether

to conduct an evidentiary hearing following default); *see also Fermin*, 93 F. Supp. 3d at 29

(collecting cases).  This Court respectfully recommends that Plaintiff be awarded damages, as

set forth below.

     **1.  Unpaid Regular Wages, Overtime Wages, and Spread of Hours Compensation**

       **a.  Legal Standard**

Plaintiff seeks back pay resulting from Defendants' failure to pay him regular and

overtime wages under the FLSA and NYLL. (Compl. ¶¶ 68-89.)  He also seeks back pay resulting

from Defendants' failure to pay him spread of hours wages under the NYLL. (*Id*. ¶¶ 90-93.)

Here, Plaintiff bears the burden of showing that he was not properly compensated for the

hours he worked.  *See Grochowski v. Phoenix Const.*, 318 F.3d 80, 87 (2d Cir. 2003); *see also*

*Pineda*, 831 F. Supp. 2d at 674.  However, where, as here, defendants have defaulted and

plaintiff lacks access to the employment records necessary to prove that he was not properly

compensated, he may "meet his burden of proof 'by relying on recollection alone.' " *Elisama*,

2016 WL 11523365, at *4 (quoting *Santillan v. Henao*, 822 F. Supp. 2d 284, 294 (E.D.N.Y. 2011)).

Under both federal and state law, employers are required to pay employees at least a

minimum hourly wage for each hour worked.  *See* 29 U.S.C. §206(a) (Minimum wage); 12

NYCRR § 146-1.2 (Basic minimum hourly rate).  Where the state minimum wage rate exceeds

the federal minimum wage, the FLSA requires employers to pay employees the state minimum

wage rate.  *See* 29 U.S.C. § 218(a); *see also Zokirzoda v. Acri Cafe Inc.*, No. 18-CV-11630 (JPO),

2020 WL 359908, at *4 (S.D.N.Y. Jan. 22, 2020).  The NYLL sets an hourly rate that is equal to or

greater than the minimum wage provided by the FLSA. *See* 29 U.S.C. § 218(a); NYLL § 652; *see*

*also Angamarca*, 2012 WL 3578781, at *4; *Pineda*, 831 F. Supp. 2d at 675.  During the relevant

timeframe, New York's minimum wage was higher than the federal minimum wage of $7.25 per

hour, and ranged from $8.00 in July 2014 to $12.00 in December 2018.

The FLSA and NYLL also require employers to "compensate employees who work over

forty hours per week with overtime pay at the rate of one and one-half times the regular rate."

*Pineda*, 831 F. Supp. 2d at 673 (internal quotation marks omitted); *see also* 29 U.S.C. §§

207(a)(1); 12 NYCRR § 142-2.2.  "Even when wages exceed the minimum prescribed by

Congress, the parties to the contract must respect the statutory policy of requiring the

employer to pay one and one-half times the regular hourly rate for all hours actually worked in

excess of 40."  *Walling v. Helmerich & Payne*, 323 U.S. 37, 42 (1944); *see also Pineda*, 831 F.

Supp. 2d at 673–74.

Where, as here, the employers paid their employee a fixed weekly salary, "the regular

hourly rate of pay, on which time and a half must be paid, is computed by dividing the salary

designed by the number of hours which the salary is intended to compensate." 29 CFR §

778.113(a); *see also Jemine v. Dennis*, 901 F. Supp. 2d 365, 380 (E.D.N.Y. 2012).  If the number

of hours per week for which the employee was compensated is unknown, there is a rebuttable

presumption that the fixed salary covers 40 hours.  *See De Jesus v. Empire Szechuan Noodle*

*House Inc.*, No. 18-CV-1281 (JPO), 2019 WL 1789901, at *2 (S.D.N.Y. Apr. 24, 2019) (citing *Moon*

*v. Kwon*, 248 F. Supp. 2d 201, 207–208 (S.D.N.Y. 2002)).

Finally, under the NYLL, employers are also required to pay employees an extra hour's pay at the NYLL minimum wage rate for each day the employee works more than ten hours. NYCRR § 146-1.6(a); *see also* NYCRR § 142-2.18 ("The *spread of hours* is the interval between the beginning and end of an employee's workday." (emphasis in original)); *Shahriar v. Smith & Wollensky Rest. Grp.*, Inc., 659 F.3d 234, 241 (2d Cir. 2011); *Elisama*, 2016 WL 11523365, at *4.

### b. Application

Plaintiff provided a spreadsheet detailing: the hours he worked (to the best of his recollection); his weekly salary; his actual pay rate, relative to the applicable minimum wage and overtime rate under New York law; and the number of days per week that he should have been paid spread of hours compensation.  (Dkt. No. 60-16 ("Pl.'s Damages Calculation").) Plaintiff's submission shows that Defendants initially paid him fixed weekly salary of $300 per week for six days of work, totaling approximately 55 hours of work per week.  Defendants subsequently paid him a fixed weekly salary of $250 for five days of work, totaling approximately 66 hours of work per week.  At most, Plaintiff was paid $5.43 per hour of work. Given that the minimum wage in New York State was $8.00 per hour when Plaintiff started working for Defendants and increased to $12.00 by the time Plaintiff left Defendants' employ, it is clear that Defendants never paid Plaintiff the minimum wage, and, much less, overtime wages for every hour over 40 that he worked, as required by the FLSA and NYLL.  Additionally, Defendants also failed to pay Plaintiff spread of hours compensation when he started working more than 10 hours per day, as required by the NYLL.

Because the New York State minimum wage rate is higher than the federal rate, Plaintiff's damages should be calculated using the New York State minimum wage rate. *See* 29

U.S.C. § 218(a); *see also Zokirzoda*, 2020 WL 359908, at *4.  The New York State minimum wage is set by NYLL § 652, which sets specific minimum wage rates for different parts of the State, including New York City, Downstate, and Nassau, Suffolk, and Westchester Counties.  NYLL § 652(1).  As of December 31, 2016, the law also distinguishes between "large employers," with eleven or more employees, and "small employers," with ten or fewer employees.  § 652 (1)(a). During the timeframe relevant to this action, small employers were required to pay a lower minimum wage than large employers.  *Id.*

Plaintiff has not alleged his employer's size. However, this Court infers that Defendants are a small employer based on the minimum wage rate sought by Plaintiff for 2017 and 2018. Because the minimum wage paid by small employers was less than the minimum wage paid by large employers during the relevant period, Defendants will not be prejudiced if the Court assumes Defendants were a small employer during the relevant timeframe.  *See Reyes v. Lincoln Deli Grocery Corp.*, No. 17-CV-2732 (KBF), 2018 WL 2722455, at *7 (S.D.N.Y. June 5, 2018) (applying the small employer rate where the Complaint was silent with respect to the size of the employer), *clarified by* 2018 WL 3105070 (S.D.N.Y. June 25, 2018).

The following are the minimum wage rates Defendants, as a small employer located in New York City, should have paid Plaintiff:

- $8.00 from July 1, 2014 through December 30, 2014;

- $8.75 from December 31, 2014 through December 30, 2015;

-  $9.00 from December 31, 2015 through December 30, 2016;

- $10.50 from December 31, 2016 through December 30, 2017 (small employers); and

- $12.00 from December 31, 2017 through December 24, 2018 (small employers).

NYLL § 652(1).  The charts below detail the amount by which Defendants underpaid Plaintiff during his employment for regular wages, spread of hours pay, and overtime wages:

| Regular Wages | | | | | | |
|---|---|---|---|---|---|---|
| Pay Period (number of weeks) | Regular Hours Worked per Week | Applicable Minimum Wage | Weekly Salary | Legal Weekly Salary for Regular Hours Worked | Weekly Underpayment | Total Underpayment |
| 7/1/2014-12/31/2014 (26 weeks) | 40 | $8.00 | $300 | $320.00 | $20.00 | $520.00 |
| 1/1/2015-12/31/2015 (52 weeks) | 40 | $8.75 | $300 | $350.00 | $50.00 | $2,600.00 |
| 1/1/2016-12/31/2016 (52 weeks) | 40 | $9.00 | $300 | $360.00 | $60.00 | $3,120.00 |
| 1/1/2017-12/31/2017 (52 weeks) | 40 | $10.50 | $250 | $420.00 | $170.00 | $8,840.00 |
| 1/1/2018-12/24/2018 (51 weeks) | 40 | $12.00 | $250 | $480.00 | $230.00 | $11,730.00 |
| Total Owed for Unpaid Regular Wages | | | | | | $26,810.00 |

| Spread of Hours Pay | | | | | | |
|---|---|---|---|---|---|---|
| Pay Period (number of weeks) | Hours Worked per Week | Days Worked per Week | Spread of Hours Days Per Week | Applicable Minimum Wage | Weekly Under-payment | Total Under-payment |
| 1/1/2017-12/31/2017 (52 weeks) | 66 | 5 | 5 | $10.50 | $52.50 | $2,730.00 |
| 1/1/2018-12/24/2018 (51 weeks) | 66 | 5 | 5 | $12.00 | $60.00 | $3,060.00 |
| Total Owed for Unpaid Spread of Hours Pay | | | | | | $5,790.00 |

| Overtime Wages | | | | | |
|---|---|---|---|---|---|
| Pay Period (number of weeks) | Overtime Hours Worked per Week | Overtime Hours Paid | Applicable Minimum Overtime Rate | Weekly Under-payment | Total Underpayment |
| 7/1/2014-12/31/2014 (26 weeks) | 15.2 | 0 | $12.00 | $182.40 | $4,742.40 |
| 1/1/2015-12/31/2015 (52 weeks) | 15.2 | 0 | $13.13 | $199.58 | $10,378.16 |
| 1/1/2016-12/31/2016 (52 weeks) | 15.2 | 0 | $13.50 | $205.20 | $10,670.40 |
| 1/1/2017-12/31/2017 (52 weeks) | 26 | 0 | $15.75 | $409.50 | $21,294.00 |
| 1/1/2018-12/24/2018 (51 weeks) | 26 | 0 | $18.00 | $468.00 | $23,868.00 |
| Total Owed for Unpaid Overtime | | | | | $70,952.96 |

Accordingly, Plaintiff is entitled to a damages award of $103,552.96 for unpaid regular wages, overtime wages, and spread of hours wages under the NYLL, which, here, provides the greatest measure of relief.

### 2.  Entitlement to Liquidated Damages

Under both the FLSA and NYLL, a plaintiff who successfully brings an FLSA or NYLL claim to recoup payments owed for unpaid regular and overtime wages is eligible to recover liquidated damages equal to the total amount of his or her compensatory damages.  29 U.S.C. § 216(b); NYLL § 663(1); *see also Chowdhury v. Hamza Express Food Corp.*, 666 F. App'x 59, 60 (2d Cir. 2016); *Zokirzoda*, 2020 WL 359908, at *6.  A plaintiff is also eligible to receive a liquidated

damages award for unpaid spread of hours wages under the NYLL.  *See Elisama.*, 2016 WL

11523365, at *6  (citing NYLL § 663(1)).

A plaintiff is typically entitled to a liquidated damages award under the FLSA or NYLL,

unless the defendants establish good faith as a defense.   29 U.S.C. § 216(b); NYLL § 663(1); *see

also Chowdhury*, 666 F. App'x at 60; *Zokirzoda*, 2020 WL 359908, at *6.  "The employer's

burden is 'a difficult one,' and 'double damages are the norm and single damages the

exception.'"  *Copantitla v. Fiskardo Estiatorio, Inc.*, 788 F. Supp. 2d 253, 316 (S.D.N.Y. 2011)

(quoting *Barfield*, 537 F.3d at 150).  It is well settled that defendants in default cannot

demonstrate good faith.  *See Zokirzoda*, 2020 WL 359908, at *6.  However, as explained by the

Second Circuit, a plaintiff may not recover liquidated damages under both the FLSA and the

NYLL for the same claims. *See Chowdhury*, 666 F. App'x at 61 (establishing that plaintiffs cannot

recover liquidated damages under both the FLSA and NYLL because the liquidated damages

provisions of the FLSA and NYLL "are identical in all material respects, serve the same functions,

and redress the same injuries"); *see also Zokirzoda*, 2020 WL 359908, at *6.

Here, the NYLL's six-year statute of limitations period covers all of Plaintiff's claims,

including his NYLL spread of hours claims.  Accordingly, the Court recommends an award of

liquidated damages under the NYLL because it will afford Plaintiff the greatest measure of

relief.   The Court recommends a liquidated damages award of $103,552.96.

### 3.  Entitlement to Pre-Judgment Interest

#### a.  Legal Standard

Under the FLSA, pre-judgment interest may not be awarded in addition to liquidated

damages. *See Fermin*, 93 F. Supp. 3d at 48.  However, plaintiffs may recover an award of pre-

judgment interest in addition to liquidated damages for underpayment of regular wages, overtime wages, and spread of hours wages awarded under the NYLL. NYLL § 198(1-a); *see also Zokirzoda*, 2020 WL 359908, at *6; *Andrade v. 168 First Ave. Rest. Ltd.,* 14 Civ. 8268 (JPO) (AJP), 2016 WL 3141567, at *10 (S.D.N.Y. June 3, 2016), *adopted by* 2016 WL 3948101 (S.D.N.Y. July 19, 2016). "The availability of both NYLL liquidated damages and pre-judgment interest 'remains  true even where liability is found not only under the NYLL but also under the FLSA.' " *Fermin*, 93 F. Supp. 3d at 48–49 (quoting *Begum v. Ariba Disc., Inc.*, No. 12cv6620 (DLC), 2015 WL 223780, at *3 (S.D.N.Y. Jan. 16, 2015)); *see also Thomas v. iStar Fin., Inc.,* 652 F.3d 141, 150 n.7 (2d Cir. 2011).  Pre-judgment interest, however, does not apply to liquidated damages or statutory penalties. *See Zokirzoda*, 2020 WL 359908, at *6; *see also Brock v. Superior Care, Inc.*, 840 F.2d 1054, 1064 (2d Cir. 1988); *Ortega v. JR Primos 2 Rest. Corp*., No. 15 Civ. 9183, 2017 WL 2634172, at *6 (S.D.N.Y. June 16, 2017).

The statutory pre-judgment interest rate in New York is nine percent per annum. CPLR § 5004.  Where damages subject to pre-judgment interest "were incurred at various times, interest shall be computed upon each item from the date it was incurred or upon all of the damages from a single reasonable intermediate date." CPLR § 5001.  Courts have " 'wide discretion in determining a reasonable date from which to award pre-judgment interest,' and interest is calculated using the simple . . . [rather than] a compounded rate." *Fermin*, 93 F. Supp. 3d at 49 (first quoting *Conway v. Icahn & Co.,* 16 F.3d 504, 512 (2d Cir. 1994); then citing *Gortat v. Capala Bros.,* 949 F.Supp.2d 374, 386 (E.D.N.Y. 2013)).  "[W]here damages are 'incurred at various times,' as is the case with unpaid wages over the course of several years, 'interest shall be computed upon each item from the date it was incurred or upon all of the

damages from a single reasonable intermediate date.' "  *Castellanos v. Mid Bronx Cmty. Hous. Mgmt. Corp.*, No. 13 Civ. 3061, 2014 WL 2624759, at *5 (S.D.N.Y. June 10, 2014) (quoting N.Y. C.P.L.R. § 5001(b)).  The intermediate date used is typically the midpoint of the plaintiff's employment.  *See Zokirzoda,* 2020 WL 359908, at *6; *see also Zheng Ming Chen v. Y Café Ave B Inc.*, 18-CV-4193 (JPO), 2019 WL 2324567, at *5 (S.D.N.Y. May 30, 2019).

### b. Application

Multiplying $97,762.96, the total amount of Plaintiff's compensatory damages for unpaid regular and overtime wages, by an interest rate of 9 percent yields $8,798.67 per year. The midpoint between Plaintiff's date of hire, on or about July 1, 2014, and the end of his employment on December 24, 2018, is September 26, 2016.  Multiplying $8,798.67 by a time period of 3.8 years (the period of time between September 26, 2016 and the date of this Report and Recommendation) yields $33,434.95 in pre-judgement interest for Plaintiff's regular and overtime wage claims.

Plaintiff has only alleged underpayment for spread of hours wages between January 1, 2017 through December 24, 2018.  The midpoint between these dates is December 28, 2017. As explained above, the total amount of compensatory damages for unpaid spread of hours wages is $5,790.00.  That amount, multiplied by nine percent is $521.10.  $521.10 multiplied by 2.56, the number of years between December 28, 2017 and July 20, 2020, yields $1,333.76 in pre-judgment interest. In total, Plaintiff is entitled to recover $34,768.71 in pre-judgment interest for his regular wage, overtime wage, and spread of hours compensation claims.

### 4.  Entitlement to Statutory Damages

#### a.  Legal Standard

Plaintiff also seeks damages for violations of the notice and recordkeeping requirements established by the New York Wage Theft Prevention Act ("WTPA"), and NYLL § 195(1) and (3). (Compl. ¶¶ 94-99.)  Because Defendants are in default, this Court accepts Plaintiff's allegation that Defendants failed to provide him with the required notices as true.  *See Xochimitl v. Pita Grill of Hell's Kitchen, Inc.*, 14-CV-10234 (JGK) (JLC), 2016 WL 4704917, at *14 (S.D.N.Y. Sept. 8, 2016) (awarding plaintiff statutory damages under NYLL § 195(1) and (3) where defendants defaulted), *adopted sub nom. by Xochimitl v. Pita Grill of Hell's Kitchen, Inc*, No. 14 Civ. 10234 (JGK), 2016 WL 6879258 (S.D.N.Y. Nov. 21, 2016).

NYLL § 195(1) requires New York employers to provide employees with a notice containing, among other things, their wage rate and frequency of pay at their time of hiring. Similarly, NYLL § 195(3) requires New York employers to provide employees with a statement containing, among other things, their regular and overtime rate of pay, the number of hours worked, and the time period covered by the payment with each payment of wages.  NYLL § 198 sets the amount of statutory damages an employee may recovery for violations of NYLL § 195.

Where an employer fails to provide an employee with a wage notice within ten business days of the employee's first day of employment, as required by NYLL § 195(1), the employee is entitled to recover $50 for each work day the violation continues to occur.  NYLL § 198 (1-b). The version of NYLL § 198(1-b) in effect at the time Plaintiff commenced his employment with Defendants, and in effect through February 26, 2015, limited the total amount of the statutory

damages to $2,500, excluding reasonable attorneys' fees and costs, for violations of NYLL § 195(1).

The version of NYLL § 198(1-d) in effect through February 26, 2015 also limited an employee's recovery for his or her employer's failure to provide a statement with each payment of wages, as required to NYLL § 195(3), to $100 for each week the violation continued and capped the maximum amount of damages for a violation of NYLL § 195(3) at $2,500. Subsequent amendments to NYLL § 198, effective February 27, 2015, increased the daily amounts employees could recover for violations of NYLL § 195(3)'s wage statement requirement to $250 per work day. § 198(1-d).  The amendment also increased the total statutory damages award for violations of NYLL § 195(1) and (3) to $5,000, excluding costs and reasonable attorneys' fees.  NYLL § 198 (1-b), (1-d); *see also Perez Garcia v. Hirakegoma Inc.*, No. 17 CIV. 7608 (SLC), 2020 WL 1130765, at *10–11 (S.D.N.Y. Mar. 9, 2020). Thus, as of February 27, 2015, the maximum an employee may recover for violations of both NYLL § 195(1) and (3) is $10,000.

### b.  Application

Plaintiff worked for Defendants from July 2014 through December 24, 2018 without receiving any of the notices required by NYLL § 195(1) and § 195(3). More than 100 work days have passed between the time NYLL § 198 (1-b) was amended, entitling Plaintiff to statutory damages of $50 per work day that the violation continued for a maximum amount of $5,000, and the end of Plaintiff's employment with Defendants.  Additionally, more than 20 work days passed between the time NYLL § 198 (1-d) was amended, permitting Plaintiff to seek $250 per work day that the violation continued for a maximum amount of $5,000, and the end of

Plaintiff's employment with Defendants.  As such, Plaintiff is entitled to the $5,000 statutory

maximum for Defendants' violatios of both the wage notice and wage statement requirements,

for a total of $10,000 in statutory damages. *See Perez Garcia*, 2020 WL 1130765, at *10–11

(awarding $10,000 in statutory damages where NYLL § 198 was amended during plaintiff's

employment).

### 5.  Compensation for Purchasing "Tools of the Trade"

An employer violates both the FLSA and NYLL if it requires its employees to purchase

"tools of the trade" that are used or required to perform the employer's work and the cost of

such tools reduces the minimum or overtime wages owed to the employee.  *See Feng Chen*,

2019 WL 2763836, at *11 (quoting NYCRR § 146-2.7(c)); *Salinas v. Starjem Rest. Corp.*, 123 F.

Supp. 3d 442, 476 (S.D.N.Y. 2015) (quoting 29 C.F.R. § 531.35).

Plaintiff alleges that Defendants required him to purchase "tools of the trade," such as

"cleaning wipes, rat poison, dishwashing sponges and plumbing sealant," and approximates

that he spent $480.00 on these items while in Defendants' employ.  (Compl. ¶ 52; Pl.'s

Damages Calculation.)  Although this Court must accept Plaintiff's factual allegations as true,

Plaintiff has failed to meet his minimal burden of explaining how the items for which he seeks

reimbursement were necessary for him to perform his job.  For example, is not clear to this

Court why Plaintiff, who was employed as a stocker and sandwich preparer, would have been

required to purchase items such as rat poison and plumbing sealant and how such items related

to the performance of his job.  Accordingly, an award of damages for tools of the trade, even on

a motion for default, is inappropriate in this case.  *See Cazares v. 2898 Bagel & Bakery Corp.*,

No. 18-CV-5953 (AJN), 2020 WL 2832766, at *5 (S.D.N.Y. May 31, 2020) (denying damages for

tools of the trade claim following default where plaintiffs failed to, among things, allege why uniforms for which they sought reimbursement were required for their work); *cf. Salinas*, 123 F. Supp. 3d at 476 (awarding damages for tools of the trade where bussers and runners working at defendant restaurant were required to purchase crumbers).

### 6. Federal Post-Judgment Interest

Plaintiff also seeks federal post-judgment interest pursuant to 28 U.S.C. §1961.  The statute provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court" and that "[s]uch interest shall be calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding . . . the date of the judgment."  28 U.S.C. § 1961.  As explained by the Second Circuit, an award of post-judgment interest is mandatory.  *See Schipani v. McLeod*, 541 F.3d 158, 165 (2d Cir. 2008) ("we have consistently held that an award of postjudgment interest is mandatory" (citing *Westinghouse Credit Corp. v. D'Urso,* 371 F.3d 96, 100 (2d Cir. 2004)); *see also Xochimitl, Inc.*, 2016 WL 4704917, at *19 (awarding post-judgment interest in employment action brought pursuant to the FLSA and NYLL).  Accordingly, Plaintiff is entitled to post-judgment interest in an amount consistent with 28 U.S.C. §1961.

### 7. Attorneys' Fees

A plaintiff who successfully brings claims pursuant to the FLSA and NYLL is entitled to recover reasonable attorneys' fees under both the FLSA and NYLL. *See* 29 U.S.C. § 216(b); NYLL §§ 198(1-a), 663(1); *see also Feng Chen*, 2019 WL 2763836, at *14; *Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012).  Plaintiff is represented by the firm Michael Faillace &

Associates, P.C. (the "Faillace Firm") and work was performed by attorneys Michael Faillace and Daniel Tannenbaum and a paralegal.  (Dkt. No. 60 ("Faillace Decl."); Dkt. No. 60-17 ("Billing Records").)  Plaintiff seeks an attorneys' fee award of $6,790.00.

Attorneys' fee awards are typically determined using the lodestar approach, or "the product of a reasonable hourly rate and the reasonable number of hours required by the case." *Millea v. Metro–North R.R.*, 658 F.3d 154, 166 (2d Cir. 2011) (quoting *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany*, 522 F.3d 182, 183 (2d Cir. 2008)); *see also Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 553 (2010).  "The reasonable hourly rate is the rate a paying client would be willing to pay," bearing in mind that "a reasonable, paying client wishes to spend the minimum necessary to litigate the case effectively."  *Arbor Hill*, 522 F.3d at 190.  In assessing whether an attorney's hourly rate is reasonable, courts may rely on their own knowledge of a firm's hourly rates. *See Gurung v. Malhotra*, 851 F. Supp. 2d 583, 596 (S.D.N.Y. 2012) (citing *Miele v. New York State Teamsters Conference Pension & Ret. Fund,* 831 F.2d 407, 409 (2d Cir. 1987)).  "Courts in this District have determined in recent cases that a fee in the range of $250 to $450 is appropriate for experienced litigators in wage-and-hour cases." *Xochimitl*, 2016 WL 4704917, at *20 (finding a range of $250 to $450 per hour reasonable; collecting cases); *see also Lopez v. Emerald Staffing, Inc*., No. 18 CIV. 2788 (SLC), 2020 WL 915821, at *13 (S.D.N.Y. Feb. 26, 2020) ("In this district, courts generally award experienced wage-and-hour attorneys between $300 to $400 per hour.").

In assessing whether the number of hours billed by the attorney is reasonable, courts consider "whether, at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures." *Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)

(citation omitted).  Plaintiff bears the burden to produce "contemporaneous time records indicating, for each attorney, the date, the hours expended, and the nature of the work done." *Scott v. City of New York*, 626 F.3d 130, 133–34 (2d Cir. 2010) (citation omitted); s*ee also Fisher v. SD Protection Inc.*, 948 F.3d 593, 600 (2d Cir. 2020).

District courts exercise "considerable discretion" in awarding attorneys' fees. *See D.B. ex rel. S.B. v. New York City Dep't of Educ.*, 18-CV-7898 (AT) (KHP), 2019 WL 6831506, at *1 (S.D.N.Y. Apr. 22, 2019) (internal quotation marks and citation omitted), *adopted by* 2019 WL 4565128 (S.D.N.Y. Sept. 20, 2019); *see also McDaniel v. County of Schenectady*, 595 F.3d 411 (2d Cir. 2010); *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 190.  When awarding attorneys' fees, the court must "clearly and concisely state reasons supporting the award."  *Tackie v. Keff Enters. LLC*, No. 14–CV–2074 (JPO), 2014 WL 4626229, at *6 (S.D.N.Y. Sept. 16, 2014) (awarding attorneys' fees under the FLSA and NYLL).

### a.  Reasonable Hourly Rate

Michael Faillace is the managing member of the Faillace Firm, and has been practicing employment law since 1983.  (Faillace Decl. ¶ 38.)  He seeks a rate of $450 per hour.  (*Id*.)  This rate is at the upper limit of what courts in this district have deemed reasonable for experienced litigators in wage-and-hour cases.  *See, e.g., Lopez*, 2020 WL 915821, at *13; *Xochimitl*, 2016 WL 4704917, at *20.  Courts in this District have also reduced Mr. Faillace's $450 rate to between $375 and $425 for work performed on cases lacking "any novel or complex legal or factual questions and in which the defendant has defaulted."  *Perez Garcia*, 2020 WL 1130765, at *12 (reducing Mr. Faillace's hourly rate to $400 in uncomplicated case where defendants defaulted); *see also, e.g.*, *Xochimitl*, 2016 WL 4704917, at *20 (reducing Mr. Faillace's hourly

rate to $425 where defendants defaulted); *Andrade v. 168 First Ave Rest. Ltd.*, 14 Civ. 8268

(JPO) (AJP), 2016 WL 3141567, at *11 (S.D.N.Y. June 3, 2016) (same), *adopted by* 2016 WL

3948101 (S.D.N.Y. July 19, 2016).  Because this action does not concern complex or novel legal

issues, and because Defendants have defaulted, it is appropriate to reduce Mr. Faillace's hourly

rate to $425.

Mr. Tannenbaum is an associate at the firm with 12 years of experience in employment

law and commercial litigation.  (*See* Fallaice Decl. ¶ 39; Billing Records 1-2.)  Mr. Tannenbaum

seeks an hourly rate of $350 per hour.  (Billing Records 1-2.)  This hourly rate falls within the

range that courts in this District have deemed reasonable for senior attorneys with similar

experience in wage-and-hour cases.  *See Sanchez Gallego v. Adyar Ananda Bhavean Corp*., No.

16-CV-4631 (AJN), 2019 WL 131957, at *5 (S.D.N.Y. Jan. 8, 2019) (hourly rate of $350 per hour

for senior associate at Faillace Firm was reasonable); *Reyes*, 2018 WL 2722455, at *8 (hourly

rate of $350 per hour was appropriate for attorney with five years of employment law

experience); *Liang Huo v. Go Sushi Go 9th Ave.*, No. 13-CV-6573 (KBF), 2014 WL 1413532, at *8

(S.D.N.Y. April 10, 2014) (finding $350 to be appropriate for an attorney with 10 years of

experience, the majority of which was spent on employment matters); *see also generally Surdu

v. Madison Glob.*, LLC, No. 15 CIV. 6567 (HBP), 2018 WL 1474379, at *10 (S.D.N.Y. Mar. 23,

2018) ("Courts of this Circuit commonly allow for hourly rates of $300 to $400 for experienced

attorneys or partners in FLSA and NYLL wage-and-hour cases.") (collecting cases).

A paralegal at the Faillace Firm also worked on this case and was billed at an hourly rate

of $100.  This hourly rate is considered to be reasonable in this District.  *See Perez Garcia*, 2020

WL 1130765, at *12 (finding hourly rate of $100 for paralegal in a labor and employment case

brought by the Faillace Firm reasonable); *Williams v. Metro-N. R.R. Co.*, No. 1:17-CV-03847 (JGK), 2018 WL 3370678, at *8 (S.D.N.Y. June 28, 2018) (finding hourly rate of $100 reasonable), *adopted by* 2018 WL 3368713 (S.D.N.Y. July 10, 2018).

**b.   Reasonable Hours Expended**

The billing records submitted to the Court indicate that Mr. Faillace spent 10 hours working on this case, that Mr. Tannenbaum worked on this case for 2.5 hours, and the paralegal spent 11.7 hours working on the case.   When assessing whether the hours worked were reasonable, courts consider whether " 'at the time the work was performed, a reasonable attorney would have engaged in similar time expenditures.'"  *Williams*, 2018 WL 3370678, at *2 (quoting *Samms v. Abrams*, 198 F. Supp. 3d 311, 322 (S.D.N.Y. 2016)); *see also Grant v. Martinez*, 973 F.2d 96, 99 (2d Cir. 1992)).   "Hours that are excessive, redundant, or otherwise unnecessary, are to be excluded . . . and in dealing with such surplusage, the court has discretion simply to deduct a reasonable percentage of the number of hours claimed as a practical means of trimming fat from a fee application." *Kirsch v. Fleet St., Ltd.*, 148 F.3d 149, 173 (2d Cir. 1998) (internal citations and quotation marks omitted); *see also Williams*, 2018 WL 3370678, at *2.  Courts also consider the nature of the legal matter, reason for the fee award, whether the case involved complex issues "requiring particular attorney skills and experience [,which] may command higher attorney rates," and whether the case "require[ed] retention of a firm with the resources needed to prosecute a case effectively." *Williams*, 2018 WL 3370678, at *3 (citing *Arbor Hill Concerned Citizens Neighborhood Ass'n*, 522 F.3d at 185–87).

Plaintiff has provided contemporaneous billing records which detail the hours expended and dates and descriptions of the tasks performed.  (*See* Billing Records.)  Plaintiff seeks

reimbursement for the 10 hours Mr. Faillace spent interviewing Plaintiff at the commencement

of this case, drafting the Complaint, preparing certificates of default and related affirmation,

and discussing the case with Plaintiff.  (*Id.*)  Plaintiff also seeks reimbursement for 2.5 hours

spent by Mr. Tannebaum preparing the materials for the default judgment, reviewing drafts of

the Motion for Default Judgment and Damages, entering a notice of appearance, and filing

letters with the Court.  Finally, Plaintiff seeks reimbursement for 11.7 hours worked by the

paralegal who conducted research for the Complaint, prepared drafts of documents, and filed

documents with the Court.

The billing records show that reasonable tasks were completed within a reasonable

amount of time.  Accordingly, Plaintiff should be granted an award of attorney's fees as follows:

| Attorney | Requested Rate | Approved Rate | Requested Hours | Approved Hours | Approved Total |
|---|---|---|---|---|---|
| M. Faillace | $450 | $425 | 10 | 10 | $4,250 |
| D. Tannebaum | $350 | $350 | 2.5 | 2.5 | $875 |
| Paralegal | $100 | $100 | 11.7 | 11.7 | $1,170 |
| Total Attorneys' Fee Award | | | | | $6,295 |

The recommended award is slightly lower than the award sought by Plaintiff.  The final award

includes Mr. Faillace's reduced rate.  The award also lowers the amount sought for an entry

dated March 28, 2019 that seeks $350 for 0.3 hours of work performed by Mr. Tannenbaum,

which would yield an hourly rate of $1,166,67.

### 8.  Costs

Both the FLSA and NYLL entitle prevailing plaintiffs in wage-and-hour actions to recover

costs. 29 U.S.C. §216(b); NYLL §663(1).  "An award of costs 'normally include[s] those

reasonable out-of-pocket expenses incurred by the attorney and which are normally charged

fee-paying clients.' " *Fisher v. SD Prot. Inc.*, 948 F.3d 593, 600 (2d Cir. 2020) (quoting *Reichman*

*v. Bonsignore, Brignati & Mazzotta P.C.*, 818 F.2d 278, 283 (2d Cir. 1987)); *see also Perez Garcia*,

2020 WL 1130765, at *13.

      Here, Plaintiff seeks to recover $1,370.00 in costs, which includes the $400 filing fee

incurred in bringing this action, and $970 for the process server fees incurred for serving

process on Defendants.  These are the types of expenses that are typically reimbursed under

the FLSA's and NYLL's costs provisions.  *See Xochimitl*, 2016 WL 4704917, at *22 (awarding costs

for filing and process server costs). However, Plaintiff has not submitted documentation

showing the amounts paid for the filing fee or process server.  Although courts may take judicial

notice of the filing fee if it is noted on the docket, they may not simply accept other costs, such

as process server costs, at face value.  *See Sanchez v. Jyp Foods Inc.*, No. 16-CV-4472 (JLC), 2018

WL 4502008, at *17 (S.D.N.Y. Sept. 20, 2018) (where plaintiff sought costs under the FLSA and

NYLL, court took judicial notice of the filing fee and denied all other requests for costs because

they were unsupported by invoices or receipts); *Eueceda v. Preesha Operating Corp.*, 14 cv 3143

(ADS)(SIL), 2017 WL 3084490, at *4 (E.D.N.Y. June 30, 2017), *adopted by* 2017 WL 3084408

(E.D.N.Y. July 18, 2017) (same).  "Where counsel fail to proffer documentation, a court may

either reduce the amount claimed or decline to award costs altogether."  *BWP Media USA Inc.*

*v. Uropa Media, Inc.,* No. 13 Civ. 7871(JSR)(JCF), 2014 WL 2011775, at *4 (S.D.N.Y. May 16,

2014).

      Because the $400 filing fee is noted on the docket, the Court may take judicial notice of

that cost.  (Dkt. No. 1.)  Additionally, the affidavits of service documenting service of the

Summons and Complaint on January 23, 2019, and Motion for Default on September 18, 2019

on Defendants Devoe and Genesis through the New York Secretary of State indicate that the

cost of service was $40 each.  (Dkt. Nos. 15-16; 44-45.)  Accordingly, I recommend awarding Plaintiff costs in the amount of the filing fee – $400 – and service of process on Devoe and Genesis through the New York Secretary of State – $160 – for a total amount of $560.

## CONCLUSION

For the reasons set forth above, I recommend that Plaintiff's Motion for a Default Judgment be granted against Defendants Devoe Grocery Store, Genesis Grocery Store, Juan C. Valdez, and Francis S. Nunez Vargas.  I further recommend that Defendants Devoe Grocery Store, Genesis Grocery Store, Juan C. Valdez, and Francis S. Nunez Vargas be held jointly and severally liable to Plaintiff for the following damages:

- $97,762.96 for unpaid minimum wage and overtime pay under the NYLL;

- $5,790.00 for unpaid spread of hours pay under the NYLL;

- $103,552.96 in liquidated damages under the NYLL;

- $10,000.00 in statutory damages for violations of the NYLL's wage notice and wage statement requirements;

- $34,768.71 in pre-judgment interest under the NYLL;

- $6,295.00 in attorneys' fees;

- $560.00 in costs; and

- Post-judgment interest pursuant to 28 U.S.C. §1961.

The Court further recommends that Plaintiff's request for damages relating to equipment costs be denied.  (Compl. ¶¶ 100-102.)

**Plaintiff is directed to serve a copy of this Report and Recommendation on Defendants and file proof of service of the same on the docket by no later than July 27, 2020.**

DATED:    July 20, 2020
          New York, New York

                                        Respectfully submitted,

                                        KATHARINE H. PARKER
                                        United States Magistrate Judge

### NOTICE

Plaintiff shall have fourteen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding three additional days only when service is made under Fed. R. Civ. P. 5(b)(2)(C) (mail), (D) (leaving with the clerk), or (F) (other means consented to by the parties)). Defendants shall have seventeen days from the service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure.

If Plaintiff files written objections to this Report and Recommendation, Defendants may respond to Plaintiff's objections within seventeen days after being served with a copy. Fed. R. Civ. P. 72(b)(2). Alternatively, if Defendants file written objections, Plaintiff may respond to such objections within fourteen days after being served with a copy. Fed. R. Civ. P. 72(b)(2); *see also* Fed. R. Civ. P. 6(a), (d). Such objections shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Analisa Torres at the United States Courthouse, 500 Pearl Street, New York, New York 10007, and to any opposing parties. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an extension of time for filing objections must be addressed to Judge Torres. The failure to file these timely objections will result in a waiver of those objections for purposes of appeal. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn*, 474 U.S. 140 (1985).